

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

ENTERED
01/19/2018

| | | |
|---|---|---|
| IN RE: | § | |
| **HECTOR RICARDO CARMONA; aka** | § | **CASE NO: 16-50155** |
| **CARMONA MILLAN** | § | |
|     Debtor | § | |
| | § | **CHAPTER  11** |
| | § | |
| **HECTOR RICARDO CARMONA** | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 16-5003** |
| | § | |
| **MARIA EUGENIA CARMONA** | § | |
|     Defendant | § | |
| | § | |
| **MARIA EUGENIA ROSALES** | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 16-5008** |
| | § | |
| **HECTOR RICARDO CARMONA** | § | |
|     Defendant | § | **Judge EDUARDO V. RODRIGUEZ** |

**MEMORANDUM OPINION**
**GRANTING MARIA EUGENIA ROSALES'**
**MOTION FOR NON-RECOGNITION**
<u>**OF FOREIGN COUNTRY JUDGEMENTS & RELATED MATTERS**</u>
*Resolving ECF Nos. 46, 104, 121 & 131*

## I.   <u>INTRODUCTION</u>

"Divorce is a declaration of independence with only two signers."[1]   True independence

in this particular case has been elusive thus far.  The story of the case sub judice began in March

2012, when Maria Eugenia Rosales ("*MER*") filed for divorce from her husband Hector Ricardo

Carmona ("*HRC*") (jointly the "*Parties*") in Laredo, Texas, which is located in  Webb County.

Although the Parties entered into a mediated settlement agreement—which ultimately served as a

---

[1] Gerald F. Lieberman

basis for the entry of a Final Decree of Divorce—a flurry of litigation, initiated by HRC, ensued in the United States of Mexico resulting in multiple foreign judgments being entered against MER.  This Court is now tasked with deciding a matter of first impression: to wit, whether to grant MER's Motion for Non-Recognition of Foreign Country Judgments ("*Motion for Non-Recognition*").

## II.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact, should be so considered.

The facts and documents in this case are not only voluminous, they are contentious. Here, the Court lays out the pertinent facts to determining the Motion for Non-Recognition as succinctly as possible.  The matter now before this Court commenced in 1991 when MER sold real property in Guanajuato, Mexico or the "San Antonio Calichar Lot" ("*SA Calichar Lot*") without HRC's permission.  *See* ECF No. 46 at 2; ECF No. 189—Ex.[2] A-21 at 4–5 (stating that the SA Calichar Lot was purchased during the marriage by HRC and MER and was community property); ECF No. 189—Ex. C at 8 (noting that MER sold the SA Calichar Lot without HRC's authorization).

On March 7, 2012, MER filed a Petition for Divorce, styled as Cause No. 2012CVG000327 D1 *In the Matter of the marriage of Maria Carmona and Hector R. Carmona Millan* ("*IMMO Carmona or Divorce Proceeding*"), in the District Court, 49th Judicial District, Webb County, Texas.  ECF No. 189—Ex. A; ECF No. 189—Ex.A-1; ECF No. 187-2.  On March 23, 2012, HRC filed his Original Answer and Counter-Petition for Divorce, which was

---

[2] Citations to MER's exhibits shall be styled as ECF No. 189—Ex.

subsequently amended.  ECF No. 189—Ex. A-1; ECF No. 187-3.  In his Counter-Petition for

Divorce, HRC alleged, *inter alia*, that MER sold and transferred community assets to third

parties without his consent or knowledge and committed fraud on the community.   ECF No.

187-3.

  On July 12, 2012, and in response to interrogatories propounded to him during the

Divorce Proceeding, HRC stated that MER committed fraud "in the selling of a LOT, in San

Antonio Calichar in 1991, without my acknowledge [sic] and consent, $100,000.00."[3]  ECF No.

189—Ex. A-22 at 17.  On October 18, 2013, MER testified in an oral deposition in which she

admitted to selling the SA Calichar Lot in 1991 without HRC's consent.  ECF No. 189—Ex. B at

6.  On November 4, 2013, HRC filed his Second Amended Inventory & Appraisement, which

included the SA Calichar Lot and a notation that it was owned by MER and it had been sold

without HRC's authorization.  ECF No. 189—Ex. C.

  On November 5, 2013, the Parties entered into a Mediated Settlement Agreement

("*MSA*") in which mediation was conducted by the Honorable Raul Vasquez ("*Vasquez*").  ECF

No. 189—Ex. A-1 at 69. The MSA declares that HRC and MER "intend to be contractually

bound by the . . . terms and conditions."  *Id.*  Included in the MSA is the following recitation:

> This settlement agreement, however, is intended to be binding and enforceable
> upon the parties immediately and agree that the formal documents and final orders
> of the court will not change the material and essential terms of this agreement.
> Furthermore, the parties agree that any conflict shall be resolved by the Mediator,
> Judge Raul Vasquez, and that such resolution by the mediator of such conflict
> shall be final and binding on the parties.
>
> *TERMS OF SETTLEMENT:*
>
> Petitioner [MER] and Respondent [HRC] hereby agree to settle all claims and
> controversies between them in this lawsuit.

---

[3] "Propiedad vendida sin autorizacion del Sr. Carmona.  Apaseo Grande, Guanajuato Mexico (10 HRAS) El
Coecillo, en San Antonio Calichar.  Rustic Farm, Current fair market value as of September 12, 2013 $1,568,627.45

*Id.*  The MSA, however, did not specifically mention the SA Calichar Lot.  *See id.*

On February 4, 2014, MER filed a Notice of Filing Settlement Agreement.  ECF No. 187-6.  Thereafter and on February 14, 2014, MER filed a Motion to Enforce the MSA, Motion to Modify Temporary Orders, Motion for Sanctions, and Motion for Trial ("*Motion to Enforce*").  ECF No. 187-7.  The Motion to Enforce alleged that HRC failed to perform his duties under the MSA and requested that the state court enforce the MSA.  *Id.*  On March 17, 2014, MER filed an Application for Injunctive Relief, Supplemental Motion to Modify Temporary Orders, and Second Motion for Sanctions in State Court where MER again sought the assistance of the state court in enforcing the terms of the MSA.  ECF No. 187-9.

On April 17, 2014, a Final Decree of Divorce ("*Final Decree*") was entered, which, *inter alia*, divided up the assets and liabilities between the Parties.  ECF No. 187-11.   Notably, the Final Decree provided, *inter alia*, that:

> [HRC] shall pay to [MER] the total amount of $1.85 million with $1.0 million within 60 days of the signing of the decree and the balance of $850,000.00 upon the sale of the Michelson residence, which must be put up for sale immediately, but no later than two years after the decree is signed.

*Id.* at 16.

The Final Decree also approved the MSA.  ECF No. 187-11 ("The Court approves the agreement which settles *all claims and controversies between the parties in this lawsuit* . . . and orders the parties to do all things necessary to effectuate the agreement.") (emphasis added).  Further, the Final Decree ordered:

> that all relief requested in this case and not expressly granted is denied except that any community property or community debt that is not divided or awarded to the parties herein shall remain undivided and belonging to the community estate for future fair and equitable distribution by this Court.  This is a final appealable judgment, for which let execution and all writs and process necessary to enforce this judgment issue.

*Id.*  Soon thereafter and on April 25, 2014 MER filed a Petition for Enforcement and Application for Injunctive Relief contending, *inter alia*, that HRC violated the MSA and Final Decree by filing a "civil suit in Mexico complaining of a 1991 sale of real property" by MER.  ECF No. 187-12.

On May 9, 2014, HRC filed a Motion for New Trial and a Motion to Reconsider, which were both denied on May 14, 2014.  ECF Nos. 187-13, 187-14, 187-16, 187-17.  Additionally, on May 13, 2014, HRC filed a Motion to Set Aside Mediated Settlement Agreement, which alleged that HRC "was fraudulently induced into entering because  [c]ounsel for [MER] has pleadings on file requesting injunctive relief for an action that [MER] and her counsel agreed to [sic]occur in the future during mediation."  ECF No. 187-15.

On May 27, 2014, HRC filed his Notice of Appeal of the Final Decree.  ECF No. 187-20.  Additionally, on August 4, 2014, HRC filed a civil complaint in Nuevo Laredo, Tamaulipas, Mexico ("*Nuevo Laredo*") seeking, *inter alia*, a declaration that MER unlawfully sold the SA Calichar Lot.  ECF No. 189—Ex. A-6.  Thereafter, on August 13, 2014, the appeal of the Final Decree was dismissed at HRC's request.  ECF No. 187-24; ECF No. 187-28.

On March 19, 2015, MER appealed a judgment, discussed *infra*, issued in Nuevo Laredo against her and in favor of HRC.  ECF No. 189—Ex. A-11 ("*Appeal*").  On March 26, 2015, HRC filed a Motion to Nullify Signature in Nuevo Laredo, arguing that MER's signature on the Appeal was a forgery, which was confirmed by HRC's designated handwriting expert, Alejandro Rene Cancino Romay.  ECF No. 189—Ex. A-12;  ECF No. 189—Ex. A-15.  Although MER attempted to have that finding vacated and have her own expert designated, the Mexican court ultimately sided with HRC.  *Compare* ECF No. 189—Ex. A-13 *with* ECF No. 189—Ex. A at 8.  On April 12, 2016, MER filed an application for injunction ("*MER's Injunction*") seeking a stay

of the various judgments against her in Nuevo Laredo.  ECF No. 55-2 at 2.

On July 21, 2016, HRC filed for bankruptcy under chapter 11 of title 11 of the United States Bankruptcy Code.[4]  Bankr. ECF No. 1.[5]  HRC lists the property at 2518 Mickelson Court, Laredo, Texas 78045 as his homestead.  Bankr. ECF No. 112 at 3.  Additionally, HRC listed MER as a creditor on Schedule E/F holding a contingent and disputed claim in the amount of $850,000.00 with the notations (i) "[p]er divorce decree with [HRC] as part of division of property[; (ii) u]pon the sale of 2518 Mickelson residence.  Debtor's ex-wife."  Bankr. ECF No. 9 at 21.  HRC amended his Schedules and continued to list MER's $850,000.00 claim with the notation "Monetary Component of the division of property pursuant to divorce decree."  Bankr. ECF No. 112 at 24.

On July 22, 2016, HRC removed IMMO Carmona—in which several matters are pending[6]—to this Court for setoff of a judgment recovered by HRC against MER of a debt owed by HRC to MER under 11 U.S.C. §§ 553, 558.[7]  ECF Nos. 1, 24.  On October 13, 2016, the Nuevo Laredo Court denied MER's Injunction.  ECF No. 55-2 at 3.  On December 27, 2016, MER filed her own adversary complaint in this Court against HRC objecting to the dischargeability of, *inter alia*, the $850,000.00 awarded to her in the Divorce Proceeding and a general objection to discharge.  Case No. 16-5008, ECF No. 1.

On January 19, 2017, HRC filed an application for injunction in Nuevo Laredo in case number 121/2016 seeking to enjoin MER from attempting to enforce or collect against him under

---

[4] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[5] "Bankr. ECF" refers to docket entries made in HRC's bankruptcy case, No. 16-50155.  Cites to the record are from Adversary Proceeding, No. 16-5003, unless otherwise noted.

[6] ECF Nos. 187-51, 187-52 (detailing the pending matters remaining in IMMO Carmona)

[7] Docketed as Adversary No. 16-5003.

the Final Decree and, thus, from pursuing her rights and claims that arise under both HRC's bankruptcy and related adversary proceedings. ECF No. 189—Ex. A-16.  On January 24, 2017, the Nuevo Laredo Court admonished MER stating that should she continue her efforts to collect under the Final Decree and prosecute the adversaries before this Court, the matter would be referred to a Mexican acting assistant district attorney for prosecution.  ECF No. 189—Ex. A-17. On January 31, 2017, the First Collegiate Tribunal of the Nineteenth Circuit in Reynosa, Tamaulipas ("*Reynosa*") issued a final judgment denying MER's Injunction and Appeal in case number 299/2016.  ECF Nos. 55-2; 56-2.

On February 21, 2017, this Court consolidated the instant adversary with the adversary MER filed against HRC at 16-5008.  ECF No. 37.  On March 2, 2017, HRC filed his Notice and Affidavit of Filing of and Mailing of Foreign Country Judgments ("*Notice*").  ECF No. 39.  The Notice informed the Court of "six authenticated foreign country judgments" in case number 00370/2014 granted in favor of HRC against MER in Nuevo Laredo.  *Id.*  The six judgments (collectively, the "*Mexican Judgments*") can be summarized as follows:

i. On March 5, 2015, the court found MER "acted illicitly" against HRC and the community property by selling the SA Calichar Lot and ordered MER to pay damages and court costs to HRC; ECF No. 39-1;

ii. On February 5, 2016, the court ordered MER to pay HRC $19,500,000.00 USM[8] for the sale of the SA Calichar Lot; ECF No. 39-3;

iii. On March 15, 2016, the court dismissed MER's appeal of the February 5, 2016 judgment; ECF No. 39-5;

iv. On April 20, 2016, the court ordered MER to pay HRC $3,900,000.00 USM[9] in court costs; ECF No. 39-7;

v. On July 12, 2016, the court ordered garnishment against MER's property, including the real property located at Avenida Hidalgo number 155 and 157,

---

[8] $989,792.44 USD as per the Banco de Mexico Exchange Rate, as of February 27, 2017.  ECF No. 46 at ¶10.

[9] $197,958.48 USD as per the Banco de Mexico Exchange Rate, as of February 27, 2017.  ECF No. 46 at ¶10

Moderno 125 and 130, currently marked with official numeration 524, in the downtown sector of Veracruz, Veracruz; $850,000.00 USD awarded to MER by the Final Decree; and the real property located at 105 Lake Flathead, Laredo, Texas; ECF No. 39-9;

vi.     On August 29, 2016, the court ordered garnishment against MER's property and business interests, including all shares in Zollvereig Union Logistics S.A. de C.V.; EXL Consultores, S.C.; Agentes Aduanales Asociados Para El Comercio Exterior S.A. de C.V.; the real property located at Agentes Aduanales Asociados Para El Comercio Exterior S.A. de C.V.; the real property located at Avenida Hidalgo, number 155, 157, Moderno 125 and 130, currently marked with official number 524, in the Downtown Sector of the city of Veracruz, Veracruz; and the $850,000.00 USD awarded to MER by the Final Decree.  ECF No. 39-11.

*See id.*

On March 27, 2017, MER filed the Motion for Non-Recognition, which requests that this Court not recognize any of the Mexican Judgments on several grounds.  ECF No. 46.  In essence, MER asserts in the Motion for Non-Recognition that (1) the Mexican Judgments were rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law, (2) that the judgments or causes of action on which the Mexican Judgments are based are "repugnant" to the public policy of Texas, and (3) the Mexican Judgments conflict with another final and conclusive judgment—namely,  the Final Decree and MSA—and are accordingly barred by *res judicata.  Id.*

On April 19, 2017, HRC filed a second Notice and Affidavit of Filing of and Mailing of Foreign Country Judgment, which put this Court on notice of the affirming the denial of MER's Appeal.  ECF No. 55; ECF No. 55-2 (additionally, the "*Mexican Judgment*").  That same day, HRC filed a third Notice and Affidavit of Filing of and Mailing of Foreign Country Judgment. ECF No. 56. The third notice details the same January 31, 2017 judgment issued by the Mexican court.  ECF No. 56-2.  Thus, HRC seeks recognition of seven[10] Mexican Judgments.

---

[10] Upon the Court's review of the two Mexican Judgments filed with this Court on April 19, 2017, this Court notes

On May 26, 2017, the Parties consented to this Court issuing its ruling on the Motion for Non-Recognition based on the pleadings and related documents filed of record.  Min. Entry 5/26/2017.  On May 30, 2017, HRC filed his Objections and Response in Opposition to the Motion for Non-Recognition ("*Response*"), which requests that this Court recognize the Mexican Judgments and objects to written declarations, statements, and affidavits submitted in support of the Motion for Non-Recognition.  ECF No. 104.  Specifically, HRC objects to (i) MER's declaration and the appended documents, ECF No. 189—Exs. A–A-24; (ii) the Leopoldo Angels Gonzalez ("*Gonzalez*") Declaration, ECF No. 189—Ex. E; (iii) the Irma Angelina Garcia ("*Garcia*") Declaration, ECF No. 189—Ex. E-3; and (iv) the Aquilino Sifuentes Yanez ("*Yanez*") Declaration, ECF No. 189—Ex. F.  *See* ECF No. 104 at 3–8.

On June 20, 2017, MER filed her Response to HRC's Objections, Reply to Response to the Motion for Non-Recognition, and Objections to Sworn Statements Submitted by Defendant ("*Reply*").  ECF No. 121.  MER responded to HRC's various objections as set forth in HRC's Response.  Additionally MER  specifically objected to (i) paragraphs 2–4, 7–10, and 12 in HRC's Declaration, ECF No. 188-2—Ex.[11] A; (ii) Javier Nuño's ("*Nuño*") Declaration as a whole because the translation is not certified, ECF No. 188-2—Ex. B; and (iii) paragraph's 10 and 14 of Nuño's Declaration, ECF No. 188-2—Ex. B.  ECF No. 121 at 7–11.

On July 12, 2017, HRC filed a Motion to Strike and for Monetary Sanctions ("*Motion to Strike*") requesting that this Court strike MER's Declaration and award HRC attorney's fees. ECF No. 131.  On August 2, 2017, MER filed a Response to the Motion to Strike.  ECF No. 142.

---

that they appear to be a copy of the same judgment.  *Compare* ECF No. 55-2 *with* ECF No. 56-2.  Accordingly, this Court will treat the Mexican Judgments as seven distinct rulings.

[11] Citations to HRC's exhibits shall be designated at ECF No. 188-2—Ex.

On August 31, 2017, MER filed an Advisory Regarding Repeal of Chapter 36 of the Texas CPRC and Enactment of Chapter 36A of the Texas CPRC, which detailed the change in Texas law providing additional grounds for non-recognition of a foreign judgment.  ECF No. 166.  MER requests that this Court consider two additional grounds for non-recognition: namely, (1) that the judgment was rendered under circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment and (ii) the specific proceedings in the foreign court leading to the judgment was not compatible with the requirements of due process of law.  *Id.*

The Court has concluded its in depth review of the pleadings, exhibits, and translated documents that have been filed in this case and has determined that the record is fully developed and the matter is now ripe for consideration.

## III. CONCLUSIONS OF LAW

### A.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  Although this adversary proceeding involves, *inter alia*, a removed state court suit, the heart of the issue before the Court is whether the Mexican Judgments should be recognized by this Court.  ECF No. 46.  Further, although the determination of recognition of a foreign judgment is an issue of state law, this Court's ruling on that issue will dramatically shape the remainder of this case as MER may be either a debtor or a creditor to HRC in his bankruptcy.  *Compare* § 157(b)(2)(O)

*with* Tex. Civ. Prac. & Rem. Code § 36A.   This is a core matter as it "concern[s] the administration of the estate" and "adjustment of the debtor-creditor" relationship.   § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[12]   Accordingly, this Court has jurisdiction over this matter.

This Court may only hear a case in which venue is proper.   28 U.S.C. § 1408.   Venue with respect to proceedings arising under title 11 is governed by 28 U.S.C. § 1409, and "may be commenced in the district court in which such case is pending."   HRC resides in Laredo, Texas, and has a chapter 11 bankruptcy proceeding pending before this Court.   Bankr. ECF No. 1. Therefore, venue is proper within this jurisdiction.

### B.  Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.   *Stern v. Marshall*, 564 U.S. 462 (2011).   *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters).   On April 20, 2017, and April 21, 2017, HRC and MER, respectively, filed their Notice of Consent to the entry of final orders by this Court on all non-core matters.   ECF Nos. 58, 59.   Accordingly, this Court has the constitutional authority to enter final orders on all matters in this case.   *See Wellness Int'l Network*, 135 S. Ct. at 1938–39.

### C.  Evidentiary Objections, Motion To Strike and For Monetary Sanctions

As a preliminary matter, the Court will first address the various evidentiary objections and responses raised by the Parties regarding MER's Motion for Non-Recognition and HRC's Response, as well as HRC's Motion to Strike.   ECF Nos. 104, 121, 130, 131.   The Court will first address HRC's objections and his Motion to Strike.

---

[12] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

### (i) The Maria Eugenia Rosales Declaration

Turning first to HRC's Objection to the MER Declaration and Motion to Strike the MER Declaration, ECF No. 189—Ex. A, the Court notes that although HRC provides a litany of objections to the MER Declaration in the Response and Motion to Strike, HRC's objections that statements in the MER Declaration are "self-serving" are not evidentiary objections in nature and therefore the Court should not consider them.   The evidentiary objections pertain to MER's personal knowledge, hearsay, MER's lack of expert witness status, relevance, and authentication of the attached documents.   ECF No. 104 at 4–5.   Generalized objections to evidence are insufficient and the objecting party is obligated to identify which statements in affidavits or declarations are objectionable.   *Khalfani v. Balfour Beatty Communities, LLC*, 2014 WL 12689827, at *3 (W.D. Tex. Feb. 6, 2014).   "[T]he Court is not required to comb through each affidavit and isolate what it believes" a party is objecting to.   *Forbus v. Andrews Distrib. Co. of N. Texas, Ltd.*, 2005 WL 3637041, at *6–7 (N.D. Tex. Nov. 1, 2005).

Apart from the objections to the attached documents and HRC's objection that MER is unqualified as an expert, discussed below, HRC's objections to the MER Declaration are generalized and do not provide the Court with specific statements that are objectionable based on hearsay, relevancy, and lack of personal knowledge.   ECF Nos. 104, 131.   Although an affidavit is hearsay by definition, it can be appropriate in a ruling based on the filings.   *See generally* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.   Here, HRC consented to a ruling on the pleadings. Min. Entry 5/26/2017.   Thus, the Parties must identify the specific nature of the alleged hearsay statements for an objection to be considered and sustained.   Here, HRC failed to demonstrate the specific statements that he found objectionable because he stated that there were "multiple [objectionable] assertions" in the MER Declaration in his Response.   ECF No. 104 at 4–5.

In a small improvement, in his Motion to Strike, HRC pointed to paragraphs 5–9 and contended that they are "replete with [objectionable] statements." ECF No. 131 at 6–7. However, paragraphs 5–9 of the MER Declaration constitute 8 pages of a 10 page statement. *See* ECF No. 189—Ex. A. This Court will not comb through the MER Declaration to determine which statements should be struck based on HRC's various generalized objections of hearsay, relevancy, and lack of personal knowledge. *See Forbus*, 2005 WL 3637041, at *6–7. Accordingly, the Court finds that HRC's generalized objections to the MER Declaration should be overruled.

As to HRC's objections regarding MER's purported alleged "expert testimony," HRC only provided this Court with a generalized objection in his Response and did not specify what testimony is objectionable under Fed. R. Evid. 702. ECF No. 104 at 5. However, in his Motion to Strike, HRC notes that in paragraph 4 of the MER Declaration MER states that the Final Decree terminated the SA Calichar Lot claim and HRC objects that MER is not qualified as an expert to make this statement. ECF No. 131 at 6. This is not a generalized objection and this Court will consider it. Only a qualified expert may offer an opinion as to the legal effect of a document. Fed. R. Evid. 702. MER is not offered as an expert witness, nor provides any testimony to convince this Court that she is an expert in Texas family law to have specialized knowledge regarding the legal nature of a divorce decree. *See* ECF No. 189—Ex. A. Accordingly, this Court finds that HRC's objection to MER's statement in paragraph 4 of the MER Declaration that the Final Decree resolved the SA Calichar Lot dispute should be sustained. *See id.* at ¶ 4. Therefore, paragraph 4 of the MER Declaration should be struck. *See id.*

The documents attached to the MER Declaration, except for ECF No. 189—Ex. A-24,

are all self-authenticating as they are certified public records from the Divorce Proceeding and foreign public records from the various Mexican lawsuits. Fed. R. Evid. 902. Although ECF No. 189—A-24 is not a self-authenticating document, the MER Declaration provides testimony of a witness with knowledge of the letter as well as HRC's handwriting due to the previous marital relationship between HRC and MER. Fed. R. Evid. 901(b)(1)–(2). However, in paragraph 4 of the MER Declaration, MER refers to ECF No. 189—Ex. A-2. ECF No. 189—Ex. A at ¶ 4. Since this Court struck paragraph 4 of the MER Declaration for failure to qualify as an expert, this Court cannot consider the material used to make an improper expert opinion. *See* Fed. R. Evid. 703. Therefore, this Court finds that ECF No. 189—Ex. A-2 should be struck. Thus, HRC's objections to the MER Declaration as enumerated in his Response and Motion to Strike should be overruled in part and sustained in part.

### (ii) Request for Monetary Sanctions

The Court now turns to HRC's request for monetary sanctions included in the Motion to Strike. ECF No. 131. When an attorney makes a representation to the Court, the attorney is certifying that the representation is not being presented for any improper purpose, the claims are warranted by law or a nonfrivolous argument, and any allegations have evidentiary support. Fed. R. Bankr. P. 9011(b). In his request, HRC provides no evidence of bad faith in submitting the MER Declaration and has failed to demonstrate any improper purpose of its use to justify awarding sanctions pursuant to Rule 9011. *See* ECF No. 131. Moreover, Rule 9011 requires, inter alia, a motion for sanctions to be made separately from other motions. Fed. R. Bankr. P. 9011(c)(1)(A). Therefore, HRC's request for sanctions in the Motion to Strike is procedurally improper. *Compare id. with* ECF No. 131. Accordingly, HRC's Motion to Strike should be granted in part, as enumerated above, and denied in part as to all other relief sought.

### (iii) The Leopoldo Angeles Gonzalez Declaration

Turning to HRC's Objections to the Leopoldo Angeles Gonzalez Declaration ("*Gonzalez Declaration*"), ECF No. 189—Ex. E, HRC again espouses non-evidentiary objections to the weight and reliability of the evidence; however, HRC objects that the Gonzalez Declaration purports to provide expert testimony without a proper factual predicate to establish Gonzalez's expertise, contains hearsay, and irrelevant legal conclusions. ECF No. 104 at 5–7.   As to HRC's objections regarding hearsay and irrelevant testimony, HRC merely makes general assertions and does not direct the Court to his specific areas of concern.   *See id.*   Once again, the Court will not consider generalized objections.   *Khalfani*, 2014 WL 12689827, at *3.   Accordingly, HRC's generalized objections to hearsay and relevancy should be overruled.

Although not specifically referred to as an expert, it appears MER is offering Gonzalez as an expert on Mexican law.   ECF No. 189—Ex. E.   Gonzalez provides his opinions on the Motion for Non-Recognition and the various Mexican lawsuits, which cannot be lay witness testimony.   Fed. R. Evid. 701.   Gonzalez's CV is offered as an exhibit attachment and demonstrates Gonzalez's significant experience in criminal law and criminal justice in Mexico.   ECF No. 189—Ex. E-1.   Gonzalez's experience with criminal law has no bearing on the issues in this case, which involve an application of Texas state law and interpretation of Mexican civil judgments all in the context of a bankruptcy adversary proceeding.   Therefore, there is no evidence that Gonzalez possesses any "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."   Fed. R. Evid. 702(a).   Therefore, Gonzalez cannot be qualified as an expert and cannot provide expert opinion testimony.   Fed. R. Evid. 702.   Accordingly, HRC's objection to the Gonzalez Declaration should be sustained and struck.   As support to his opinions, ECF No. 189—Exs. E-1, E-2, and E-3 are attached to the

Gonzalez Declaration.  Additionally, the attachments to the Gonzalez Declaration should also be struck.  *See generally* Fed. R. Evid. 703.

### (iv) The Irma Angelina Garcia Declaration

The Court now turns to HRC's objection to the Irma Angelina Garcia Declaration ("*Garcia Declaration*").  As a preliminary matter, the Court notes that the Garcia Declaration is offered as an attachment to the Gonzalez Declaration and as a separate exhibit.  *See* ECF No. 189—Exs. E-3, G.  Gonzalez purports to rely on the Garcia Declaration in reaching his conclusions.  *Compare id. with* ECF No. 189--Ex. E.  As Gonzalez cannot provide expert testimony, this Court should not consider the materials Gonzalez relied upon in making his opinion.  *See generally* Fed. R. Evid. 703.

Nevertheless, the Garcia Declaration is also offered as substantive evidence.  ECF No. 189—Ex. G.  Although HRC does not directly point to ECF No. 189—Ex. G, HRC complains that paragraphs 3 and 4 in the Garcia Declaration are irrelevant, fail to establish personal knowledge, and contain inadmissible hearsay.  ECF No. 104 at 7–8.  The Garcia Declaration establishes personal knowledge because it establishes that Garcia personally witnessed the events described through her written testimony.  Fed. R. Evid. 602.  The testimony is not irrelevant because it pertains to MER's assertion that the Motion for Non-Recognition should be granted because the Mexican Judgments were rendered under a system that is not impartial and does not comport with due process.  Fed. R. Evid. 401.  *Compare id. with* ECF No. 46 at 7–11.  Finally, HRC objects to the last sentence of Paragraph 5 of the Garcia Declaration because it contains hearsay testimony.  ECF No. 189—Ex. G.  The Court agrees and finds that Garcia did not establish personal knowledge as to how Mr. Nuño received the expert report of Gilberto Brizuela.  *See* Fed. R. Evid. 602, 802.  Accordingly, HRC's objection to the Garcia Declaration

should be overruled in part and sustained in part, and the sentence beginning with "However, it was not available. . ." and ending with ". . . directly to Mr. Nuño" in Paragraph 5 should be struck.  ECF No. 189—Ex. G at ¶ 5.

### (v) The Aquilino Sifuentes Yanez Declaration

HRC's objections to the Aquilino Sifuentes Yanez Declaration ("*Yanez Declaration*") found at ECF No. 189—Ex. F on the basis of relevancy and MER's failure to qualify Yanez as an expert.  ECF No. 104 at 8.   The testimony is not irrelevant because it pertains to MER's assertion that the Motion for Non-Recognition should be granted because the Mexican Judgments were rendered under a system that is not impartial and does not comport with due process.  Fed. R. Evid. 401.  *Compare* ECF No. 189—Ex. F *with* ECF No. 46 at 7–11. Additionally, the Court finds that the Yanez Statement, as well as the accompanying attachments, demonstrates that Yanez is a qualified expert based on his years of experience as a litigation attorney in civil matters in Mexico, his application of the Mexican law to the facts presented, and the use of reliable principles and methods in the legal profession.  *Compare* MER Ex. F *with* Fed. R. Evid. 702.  Accordingly, the Court finds that Yanez is appropriately qualified as an expert.  Fed. R. Evid. 702.  Therefore, HRC's objections should be overruled.

The Court now turns to MER's objections to HRC's exhibits.  ECF No. 121.

### (i) Hector Ricardo Carmon's Declaration

First, MER objects to several enumerated paragraphs within HRC's Declaration, ECF No. 188-2—Ex. A.  *Id.* at 7–10.  Specifically, MER objects to Paragraphs 2–4 in HRC's Declaration based on relevancy.  The Court finds that the testimony contained in Paragraphs 2–4 of HRC's Declaration is irrelevant because the testimony contained therein has no impact on whether the Mexican Judgments should be recognized.  Fed R. Evid. 402.

MER next objects to Paragraph 7 in HRC's Declaration, ECF No. 188-2—Ex. A, on the basis that it contains inadmissible hearsay and fails to demonstrate HRC's personal knowledge. ECF No. 121 at 8.  MER also objects on the basis that the statements violate the parol evidence rule, which is a legal argument and not a basis for an evidentiary objection.  *See id.*  The second sentence of Paragraph 7 purports that MER's counsel contacted Vasquez regarding HRC's filing of a Mexican lawsuit.  ECF No. 188-2—Ex. A at 4.  HRC's Declaration fails to establish personal knowledge of any conversation between MER's counsel and Vasquez and as such cannot provide testimony regarding that alleged conversation. Fed. R. Evid. 602.  Accordingly, the second sentence of Paragraph 7 should be struck.  ECF No. 188-2—Ex. A. at ¶ 7.  The third sentence of Paragraph 7 attributes statements to Vasquez, which are hearsay.  Fed. R. Evid. 802. Accordingly, the third sentence of Paragraph 7 should be struck.  ECF No. 188-2—Ex. A at ¶ 7. The remainder of Paragraph 7 is appropriate.

MER objects to Paragraph 8 in HRC's Declaration on the basis that it contains inadmissible hearsay and fails to demonstrate HRC's personal knowledge.  ECF No. 121 at 9. Specifically, MER objects to the portion of Paragraph 8 reading "and Judge Vasquez had confirmed in February that the SA Calichar Lot issues had not been resolved" as hearsay.  *Id.* The statement is hearsay and no exception applies.  Fed. R. Evid. 802, 803.  Accordingly, that portion of Paragraph 8 should be struck.  ECF No. 188-2—Ex. A at ¶ 8.  The remainder of Paragraph 8 is appropriate.

MER objects to Paragraphs 9–10 in HRC's Declaration based on relevancy, hearsay, and assumption of facts not in evidence.  ECF No. 121 at 9–20.  Paragraph 9 refers to a Mexican lawsuit that is not the subject of the Motion for Non-Recognition and is therefore irrelevant to the proceeding before this Court.  Fed. R. Evid. 402.  Accordingly, Paragraph 9 should be struck.

ECF No. 188-2—Ex. A. at ¶ 9.  Paragraph 10 discusses HRC's instructions to his Mexican counsel to file a Mexican lawsuit at the center of the Motion.  ECF No. 188-2—Ex. A at ¶ 10.  Accordingly, the statements are relevant and admissible.  Fed. R. Evid. 402.  Further, Paragraph 10 does not contain any inadmissible hearsay declarations.  Fed. R. Evid. 802.

MER objects to Paragraph 12 in HRC's Declaration on the basis of relevancy.  ECF No. 121 at 10.  Paragraph 12 discusses potential collection proceedings and garnishment of property based on the judgments HRC received against MER in Mexico.  ECF No. 188-2—Ex. A at ¶ 12.  The first two sentences of Paragraph 12 are relevant to the instant proceeding because they pertain to the Mexican judgments the Motion for Non-Recognition is attempting to avoid.  Fed. R. Evid. 402.  The third sentence of Paragraph 12, however, discusses HRC's belief that MER can afford the balance due under the Mexican judgments.  ECF No. 188-2—Ex. A at ¶ 12.  MER's ability to pay is irrelevant to the issue of whether the Mexican judgments should be recognized.  Fed. R. Evid. 402.  Accordingly, the third sentence of Paragraph 12 should be struck.  ECF No. 188-2—Ex. A at ¶ 12.  Therefore, MER's objections to the HRC Declaration should be overruled in part and sustained in part as discussed above.

MER also objects to ECF No. 188-2—Ex. 2, an email from Vasquez, which is attached to HRC's Declaration, on the basis that it is inadmissible hearsay.  ECF No. 121 at 8.  The email is hearsay because it contains statements offered for the truth of the matter asserted; namely, that the Mediated Settlement Agreement did not preclude HRC from filing suit against MER in Mexico.  *Compare* Fed. R. Evid. 802 *with* ECF No. 188-2—Ex. 2.  No exceptions to the rule against hearsay apply to the email.  Fed. R. Evid. 803.  Therefore, MER's objection should be sustained and ECF No. 188-2—Ex. 2 should be struck.

### (ii) Javier Nuño's Declaration

Finally, MER objects to Javier Nuño's Declaration, ECF No. 188-2—Ex. B, because the English translation is not certified.  ECF No. 121 at 10.  Affidavits that have been translated from Spanish to English may be struck if the affidavit has not been properly certified as accurate. *Xavier v. Belfor USA Group, Inc.*, 2008 WL 4862533, at *3 (E.D. La. Sep. 23, 2008) (finding that without certification the court "could not ascertain whether attestations in the affidavits [were] hearsay or not"); *Diaz v. Carballo*, 2007 WL 294663, at *4 (N.D. Tex. 2007).  Nuño's Declaration is not a certified translation.   ECF No. 188-2—Ex. B.   Accordingly, MER's objection should be sustained.   Therefore, this Court finds that Nuño's Declaration and the attached documents, ECF No. 188-2—Exs. 1–11, should be struck.

Having determined the Parties' evidentiary objections and HRC's Motion to Strike, this Court will proceed to its discussion of the Motion for Non-Recognition.

### D.  The Mexican Judgments Should Not Be Recognized by This Court

The enforcement of a money judgment is a matter of state law.  Fed. R. Civ. P. 69(a)(1). State law "governs the recognition and enforcement of foreign country judgments."  *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1003 (5th Cir. 1990).  Texas state law provides the standard for whether a foreign country judgment will be recognized.  Tex. Civ. Prac. & Rem. Code § 36A ("*Texas Recognition Act*").   The Texas Recognition Act applies to foreign judgments if that judgment "(1) grants or denies recovery of a sum of money; and (2) under the law of the foreign country in which the judgment is rendered, is final, conclusive, and enforceable."  § 36A.003(a).   The Texas Recognition Act notes that the "party seeking recognition of a foreign-country judgment has the burden of establishing that this chapter applies to the foreign-country judgment."  § 36A.003(c).  Conversely, the party "resisting recognition of a foreign-country judgment has the burden of establishing that a ground for non-recognition"

exists.   § 36A.004(d).   Typically, a court shall recognize a foreign-country judgment. § 36A.004(a).   However, a court may not recognize a foreign-country judgment if one of the following is demonstrated:

> (1) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
> (2) the foreign court did not have personal jurisdiction over the defendant; or
> (3) the foreign court did not have jurisdiction over the subject matter.

§ 36A.004(b).   Additionally, a court is not required to recognize a foreign-country judgment if any of the following is demonstrated:

> (1) the defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;
> (2) the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present the party's case;
> (3) the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or the United States;
> (4) the judgment conflicts with another final and conclusive judgment;
> (5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in the foreign court;
> (6) jurisdiction was based only on personal service and the foreign court was a seriously inconvenient forum for the trial of the action;
> (7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment;
> (8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law; or
> (9) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, would constitute foreign-country judgments to which this chapter would apply.

§ 36A.004(c).

Notably, the Texas Recognition Act "does not prevent the recognition under principles of comity."  § 36A.011.  If a foreign-country judgment is entitled to recognition, then the foreign-country judgment is conclusive between the parties and "enforceable in the same manner and to the same extent as a judgment rendered in this state."  § 36A.007.

MER asserts in the Motion for Non-Recognition that this Court should not recognize the Mexican Judgments on five separate bases: (1) that the Mexican Judgements were rendered under a judicial system that does not  provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) that the Mexican Judgments were rendered in circumstances that raise substantial doubt about the integrity of the Mexican court with respect to the Mexican Judgments; (3) that the specific proceedings in the Mexican court leading to the Mexican Judgments were not compatible with the requirements of due process of law; (4) that the Mexican Judgments or cause of action on which the Mexican Judgments are based are repugnant to the public policy of Texas or the United States; and (5) that the Mexican Judgments conflict with another final and conclusive judgment.  *See* ECF Nos. 46, 166.

### i. The Mexican Judgments Were Not Rendered Under Judicial System That Does Not Provide Impartial Tribunals or Procedures That Are Not Compatible With The Requirements of Due Process of Law

Turning to MER's first argument—that the Mexican Judgments were rendered under a judicial system that does not provide impartial tribunals or due process—this Court must consider whether the Mexican legal system is impartial and provides procedures that are compatible with the requirements of due process of law.  § 36A.004(b)(1).  The inquiry "focuses on the fairness of the foreign judicial system *as a whole*," rather than the specific judgment challenged.  *DeJoria v. Maghreb Petroleum Exploration, S.A.*, 804. F.3d 373, 381 (5th Cir. 2015) (emphasis added).  If a foreign judgment was rendered under a system that does not provide impartial tribunals or due process, then that is mandatory grounds for non-recognition. *Id.*  The Texas Recognition Act "requires only the use of procedures compatible with the requirements of due process. . . [, and] the foreign proceedings need not comply with the traditional rigors of American due process."  *Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 330 (5th

Cir. 2002).    The Fifth Circuit has found that the foreign judicial system must only be "fundamentally fair" and "not offend against basic fairness."  *Id.*  Thus, there is a "high bar for non-recognition" based on due process.  *DeJoria*, 804. F.3d at 381.

The Fifth Circuit has listed a variety of examples of foreign judicial systems that fail to comport with due process standards.  *DeJoria*, 804 F.3d at 382–383.  For example, Iran is identified as an "official state sponsor of terror" where trials are "private, politicized proceedings," and the government does not "believe in the independence of the judiciary."  *Id.* (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411–13 (9th Cir. 1995)).    Additionally, countries embroiled in civil war may result in "sufficiently powerful and uncontradicted documentary evidence describing chaos" in the judicial system to justify non-recognition.  *Id.* at 383 (citing *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141–44 (2d Cir. 2000)).   Conversely, the Fifth Circuit has found that there was "simply no indication that it would be impossible for an American to receive due process or impartial tribunals in Morocco" because there was no evidence of anti-American sentiment, parties could retain counsel, and the judicial system was not in complete collapse.  *Id.* at 383–84.

In the Motion for Non-Recognition, MER points to specific actions taken by the Mexican court to support her contention that the Mexican Judgments should not be recognized due to Mexico's lack of impartiality and due process in its judicial system.  ECF No. 46 at 7–9.  MER attempts to argue that the Mexican court's determination that the signature on MER's Notice of Appeal was a forgery is evidence of a lack of due process because an appeal is a due process right.  *Id.* at 10–11.   At the outset, the specific circumstances surrounding the Mexican Judgments are irrelevant to this Court's inquiry into whether the Mexican judicial system as a whole is impartial and lacks due process because the Fifth Circuit does not look to the specific

circumstances surrounding the judgments in question. *DeJoria*, 804. F.3d at 381. Accordingly, the Court will not consider the specific circumstances surrounding the Mexican Judgments when determining whether the Mexican judicial system as a whole is impartial and lacks due process.

MER submitted the U.S. Department of State Country Reports on Human Rights Practices for 2013 through 2016 ("*Human Rights Report*"), which indicates that in Mexico "widespread impunity and corruption remained serious problems . . . in the judicial sector." ECF No. 189—Ex. H at 1. Further, the Human Rights Report states that "although the constitution and law provide for an independent judiciary, court decisions were susceptible to improper influence by both private and public entities, particularly at the state and local level." *Id.*at 15. The Human Rights Report notes that the system is "undergoing reform." *Id.* at 16. Per the Human Rights Report, "a typical trial consists of a series of fact-gathering hearings during which the court receives documentary evidence or testimony. A judge in chambers reviews the case file and then issues a final, written ruling." *Id.* at 17.

Despite suggestions in the Human Rights Report that corruption exists in the Mexican judicial system, MER has failed to meet her burden to establish that the Mexican judicial system is not "fundamentally fair." Mexico is not a state-sponsor of terror, nor is there evidence of widespread anti-American sentiment. *Compare* ECF No. 189—Ex. H *with Bank Melli Iran*, 58 F.3d at 1411–13. Mexico is not embroiled in civil war with a collapsing judicial system, and— as per the Human Rights report—reform is occurring. *Compare* ECF No. 189—Ex. H *with Bridgeway Corp.*, 201 F.3d at 141–44. Notably, per MER's own arguments, parties are represented by counsel and there is a right to appeal adverse decisions. *See* ECF No. 46; ECF No. 189—Ex. A. Conversely, HRC submitted the Declaration of Mexican attorney Barbara Segovia de Alarcon who testified that the Mexican judicial system resembles the United States

judicial system in seven ways: (i) requirements for personal jurisdiction, (ii) subject matter jurisdiction requirements, (iii) notice requirements, (iv) defendants must have an opportunity to present evidence, (v) opportunity to appeal, and (vi) an opportunity for revision of all final judgments and decrees.  ECF No. 188-2—Ex. C. at 2–3.  The evidence before this Court simply does not meet the high burden of demonstrating that the Mexican judicial system does not provide impartial tribunals or due process.  *See DeJoria*, 804. F.3d at 381.  Moreover, the evidence before the Court demonstrates that the Mexican judicial system, albeit imperfect, comports with requirements of due process.  *See* ECF No. 188-2—Ex. C.  Thus, this Court finds that the Mexican Judgments were rendered under a judicial system that provides impartial tribunals or procedures compatible with the requirements of due process of law and thus  cannot deny recognition of the Mexican Judgments under § 36A.004(b)(1).  *See id.*

### ii. The Mexican Judgments Were Not Rendered Under Circumstances That Raise Substantial Doubt about the Integrity of the Mexican Court With Respect to the Judgments

Although not originally in the Motion for Non-Recognition, MER requests that this Court deny recognition because the Mexican Judgments were rendered in circumstances that raise substantial doubt about the integrity of the Mexican court with respect to the Mexican Judgments.  ECF No. 166 (citing § 36A.004(c)(7)).  This Court notes that due to the recent changes to the Texas Recognition Act case law has not been substantially developed as to this ground for non-recognition.  However, similar statutes for non-recognition exist in other states.  *See* N.C.G.S. § 1C–1852 (North Carolina Uniform Foreign Country Money Judgments Recognition Act); Mich. Comp. Laws § 691.1134 (Michigan Uniform Foreign country Money judgments Recognition Act); ORS 24.360(3)(g) (Oregon Uniform Foreign Country Money Judgments Recognition Act).  For example, in North Carolina, non-recognition under the

"substantial doubt" subsection "requires a showing of corruption in the particular case that had an impact on the judgment that was rendered." *Savage v. Zelent*, 777 S.E.2d 801, 808 (N.C. Ct. App. 2015). The court noted that doubt about the fairness of a case "does not rise to the level of corruption in the particular case required to deny recognition." *Id.* Further, the court did not find that there was "substantial doubt" as to the integrity of the foreign court when the defendant had notice, an opportunity to be heard, an opportunity to have counsel, and an opportunity to appeal. *Id.* at 809.

MER asserts that she was denied due process because the Mexican court violated Mexican law and procedure when it determined that MER's signature was a forgery. ECF No. 46 at 7–11. MER submits the Declaration of Aquilino Sifuentes Yanez ("*Yanez*"), which purports that the evidence offered to demonstrate that MER's signature was a forgery "was not properly heard in accordance of the terms established" by Mexican law. ECF No. 189—Ex. F. Yanez suggests that Mexican law was violated because (i) the original designated expert, Jesus Soto Guantos  ("*Guantos*"), never submitted his report; (ii) the Mexican court fined the original expert without enforcing the fine; (iii) the Mexican court asked the Attorney General's Office to designate a new expert rather than choosing an expert from the published list of graphology experts of the Judicial Branch of the State of Tamaulipas; (iv) the Mexican court erroneously stated that Guantos was the only registered graphology expert; and (v) the Mexican Court designated a private expert witness. *See id.*

Although she is unsatisfied with the results, MER admits that she filed documents with the Mexican court and appealed the judgment. ECF No. 189—Ex. A. Further, MER does not suggest and there is no evidence that she did not receive notice of the proceedings related to the Mexican Judgments. Finally, MER was represented by counsel in Mexico. *Id.* Concern about

the Mexican court's appointment of expert witnesses does not amount to substantial evidence that "corruption" plagued the Mexican Judgments. *See Savage*, 777 S.E.2d at 808. Further, the Civil Procedural Code for the State of Tamualipas ("*CTPC*") provides that a court "may use only those experts that have met the requirements established by the applicable laws and that are registered with the Court, under the terms set forth in this regulation" and notes that the Official List of Experts is a directory of individuals who "have irrefutably demonstrated" their expert status. ECF No. 189—Ex. F-3.

The CTPC does not purport to limit courts to choosing an expert witness from the Official List of Experts; rather, the Official List of Experts serves as a resource to provide qualified experts. *See id.* The evidence before this Court demonstrates that the Mexican court chose to utilize an expert witness who was not on the Official List of Experts. *See* MER Ex. F-4. Although Guantos was not the only graphology expert listed, this Court will not attempt to insert itself into the shoes of the Mexican court and usurp its decision-making. *See In re E.H.*, 450 S.W.3d 166 (Tex. App. Houston [14th Dist.] Oct. 23, 2014, pet. denied) (describing comity as "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another"). Additionally, the Mexican court leveled a penalty fee against Guantos for failing to comply as the designated expert, which appears to be an exercise in fairness. *See* ECF No. 189—Ex. F. Finally, this Court notes that although MER contends that the Mexican court was corrupt, she fails to provide any evidence of corruption regarding the remaining Mexican Judgments and chooses instead to focus on the finding that her signature was a forgery. *See* ECF No. 46

Accordingly, without evidence of corruption, this Court finds that the Mexican Judgments were not rendered in circumstances that raise substantial doubt about the integrity of

the rendering court with respect to the judgments and thus cannot deny recognition of the Mexican Judgments based on § 36A.004(c)(7).  *See Savage*, 777 S.E.2d at 808.

### iii. The Specific Proceedings in the Mexican Court Were Compatible with the Requirements of Due Process of Law

In the same vein, MER requests that this Court deny recognition because the specific proceedings in the Mexican court leading to the Mexican Judgments were not compatible with the requirements of due process of law.  ECF No. 166 (citing § 36A.004(c)(8)).  "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Ins. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); *In re Shank*, 569 B.R. 238, 251 (Bankr. S.D. Tex. 2017).  Actual notice, however, is a question of fact rather than a question of law.  *In re Shank*, 569 B.R. at 251(citing *Doe v. Dallas Independent School District*, 220 F.3d 380, 384 (5th Cir. 2000)).  Actual notice is defined as "notice given directly to, or received personally by, a party." *Actual Notice*, BLACK'S LAW DICTIONARY (10th ed. 2014).  As actual notice is not the due process standard, if a party receives actual notice then due process is "more than satisfied." *Espinosa*, 559 U.S. at 272.

As discussed above, MER received notice of the suits against her in Mexico and the Mexican Judgments.  *See* ECF No. 189—Exs. A-6, A-7, A-8, A-9, A-10, A-12.  MER does not suggest that she did not receive notice of any of the actions in Mexico and notes throughout her Declaration that she was aware of the proceedings and answered the complaint.  ECF No. 189— Exs. A, A-7.  Therefore, this Court finds that MER received actual notice of the Mexican proceedings.  *In re Shank*, 569 B.R. at 251.  MER exercised her right to appeal despite her dissatisfaction with the results.  ECF No. 189—Ex. A-11.  Accordingly, this Court finds that

MER had multiple opportunities to be heard in Mexico. *In re Shank*, 569 B.R. at 251. Thus, this Court finds that the evidence presented establishes that the specific proceedings in the Mexican courts leading to the judgments were compatible with the requirements of due process of law. *See id.* Therefore, this Court finds that it cannot deny recognition of the Mexican Judgments based on § 36A.004(c)(8).

### iv. The Underlying Cause of Action in the Mexican Judgments is Not Repugnant to Texas Public Policy; However, the Mexican Judgments are Repugnant to Texas Public Policy

MER also requests that this Court exercise its discretion to refuse recognition of the Mexican Judgments on the basis that the Mexican Judgments violate Texas public policy. ECF No. 46. To refuse to recognize the Mexican Judgments on public policy grounds, this Court must determine that the "judgment[s] or the cause of action on which the judgment[s] [are] based [are] repugnant to the public policy of this state or the United States." § 36A.004(c)(3). Prior to the enactment of § 36A, the Texas Recognition Act "[did] not refer to the judgment itself, but specifically to the cause of action on which the judgment is based." *Soc'y of Lloyd's*, 303 F.3d at 332 (interpreting the language of the previous version of the Texas Recognition Act). However, the plain language of the Texas Recognition Act now allows courts to deny recognition if a judgment itself is repugnant to public policy, rather than merely a repugnant cause of action in a foreign proceeding. *See* § 36A.004(c)(3).

Irrespective of this change, "the level of contravention of Texas law has 'to be high before recognition [can] be denied on public policy grounds.'" *Southwest Livestock and Trucking Co. v. Ramon*, 169 F.3d 317, 321 (5th Cir. 1999) (quoting *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F. Supp. 885, 900 (N.D. Tex. 1980)). Notably, the Fifth Circuit has stated that "the narrowness of the public policy exception reflects a compromise between two axioms—res

judicata and fairness to litigants—that underlie our law of recognition of foreign country judgments." *Southwest Livestock and Trucking Co.*, 169 F.3d at 321. Significantly, the standard to deny recognition is whether a judgment or cause of action is "repugnant to state public policy, not whether the standards for evaluating that cause of action are the same or similar in the foreign country." *Soc'y of Lloyd's*, 303 F.3d at 332.

MER asserts that the Mexican Judgments violate public policy because Texas does not permit "fraud on the community" as a separate cause of action. ECF No. 46 at 13 (citing *Belz*, 667 S.W.2d at 246). Turning first to this argument, this Court must consider whether the "fraud on the community" cause of action underlying the Mexican Judgments is repugnant to Texas public policy or the public policy of the United States. § 36A.004(c)(3). At the outset, family law, such as divorce proceedings, is a state law issue and thus, the public policy of the United States is not impacted in this case. *See Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (noting that "[t]he regulation of domestic relations is traditionally the domain of state law"). Fraud on the community can be defined as fraud based on "intentional actions depriving [a spouse] of property belonging to [a spouse] by virtue of [a spouse's] interest in the community estate." *Belz v. Belz*, 667 S.W.2d 240, 246 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) Texas does not provide a separate cause of action for fraud on the community. *Id.* "Waste, fraudulent transfer, or other damage to community property are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of community property upon divorce." *Chu v. Hong*, 249 S.W.3d 441, at 444–45 (Tex. 2008). The public policy reasoning behind this concept is that "allowing independent torts between spouses for community damage would thus require fault to be determined twice—once in the tort action, and again in the property division." *Id.* at 445.

This Court is reticent to declare a cause of action repugnant to Texas public policy due to the high burden placed by the Fifth Circuit. *Southwest Livestock and Trucking Co.*, 169 F.3d at 321. Although Texas does not provide a separate cause of action for fraud on the community, litigants can assert claims of community property damage in a divorce proceeding. *Chu*, 249 S.W.3d at 444–45. Additionally, causes of action based upon fraud and fraudulent transfer of real property are available in Texas outside of a divorce context. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n. 45 (Tex. 2002); *Ernst & Young v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 578–79 (Tex. 2001). Texas public policy specifically is concerned with a former spouse being punished twice with a fraud on the community cause of action: in the division of property and in an independent tort action. *Id.* MER has not provided this Court with any evidence that an individual is forced to pay damages twice based on Mexico's allowance of a separate fraud on the community cause of action. *See* ECF No. 46. Accordingly, this Court finds that the cause of action underlying the Mexican Judgments is not repugnant to Texas public policy. *Chu*, 249 S.W.3d at 444–45.

However, due to the recent change to the Texas Recognition Act, the Court's inquiry does not end there. *See* § 36A.004(c)(3). This Court must also consider whether the Mexican Judgments themselves are repugnant to Texas public policy. *See id. But see Soc'y of Lloyd's*, 303 F.3d at 332. MER asserts that although HRC may have had a viable claim against MER for the sale of the SA Calichar Lot, the Mexican Judgments are "especially egregious" because the pair sued each other in Texas for divorce and entered into a binding MSA with a Final Decree. ECF No. 46 at 14. This Court agrees.

The issue surrounding the sale of the SA Calichar Lot was a controversy throughout the Divorce Proceeding as demonstrated by HRC's discussion of the sale in his response to

interrogatories, MER's deposition answers, and HRC's inclusion of the property in his Second Amended Inventory and Appraisement.  ECF No. 189—Exs. A-21, B, C.  The Final Decree, which incorporates the MSA, "settles all claims and controversies between the parties."  ECF No. 187-11 at 2.  Importantly, the mediator, Vasquez, specifically "ensure[d] that the form of this Final Decree of Divorce [was] consistent with the terms and conditions" of the MSA.  *Id.*  Irrespective of whether the SA Calichar Lot was specifically mentioned in the Final Decree or MSA, all claims and controversies—including the SA Calichar Lot sale—were settled by those documents and the community was divided accordingly.  *See id.*  Texas public policy specifically condemns fault being determined twice, which is exactly the situation here.  *See Chu*, 249 S.W.3d at 444–45.  The Mexican Judgments find MER at fault for fraud on the community, despite the division of the community property in the Final Decree.  *Compare* ECF No. 187-11 *with* ECF No. 39-1 *and* ECF No. 39-3 *and* ECF No. 39-5 *and* ECF No. 39-7 *and* ECF No. 39-9 *and* ECF No. 39-11 *and* ECF No. 55-2 *and* ECF No. 56-2.  Based on the foregoing, this Court finds that the Mexican Judgments themselves are directly in contravention with Texas public policy.  *See Chu*, 249 S.W.3d at 444–45.  Accordingly, this Court finds that it should decline to recognize the Mexican Judgments under § 36A.004(c)(3).

### v. The Mexican Judgments Conflict with Another Final and Conclusive Judgment

Although the Mexican Judgments should not be recognized for public policy reasons, this Court will address MER's final argument for non-recognition.  Specifically, MER requests that this Court deny recognition because the Mexican Judgments conflict with another final and conclusive judgment, specifically the MSA and the Final Decree.  ECF No. 46 (citing § 36A.004(c)(4)).  MER contends that the elements of *res judicata* are met because the Final Decree was a final judgment on the merits, the parties are identical, and the claims in the

Mexican Judgments could have been raised in the Divorce Proceeding.  ECF No. 46 at 14. Conversely, HRC asserts that the Final Decree and MSA did not resolve the same claims as in the Mexican Judgments.  ECF No. 104 at 30.  This Court must ascertain whether *res judicata* barred the seven Mexican Judgments in order to determine whether to grant the Motion for Non-Recognition.

The application of *res judicata* produces finality for the parties and promotes judicial economy.  *In re Shank*, 569 B.R. 238, 250 (Bankr. S.D. Tex. 2017).  Parties know that when final judgment is entered and all appeals are exhausted the case is over and the decision will be binding on all issues determined in the lawsuit or proceeding.  *Id.*  To determine whether a prior judgment should be granted *res judicata* effect, the Fifth Circuit applies the following test:

> [f]or a prior judgment to bar an action on the basis of res judicata, the parties must
> be identical in both suits, the prior judgment must have been rendered by a court
> of competent jurisdiction, there must have been a final judgment on the merits and
> the same cause of action must be involved in both cases.

*In re Chestnut*, 356 F. App'x 732, 736 (5th Cir. 2009) (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983)).  "The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit."  *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W. 2d 627, 630 (Tex. 1992)).

Here, there is no dispute that the parties in the Divorce Proceeding, the MSA, and the Mexican Judgments are identical.  Further, there is no dispute that the Texas court presiding over the Divorce Proceeding had competent jurisdiction.   Further, the Final Decree, which incorporates the MSA, is a final judgment because it was not successfully appealed.  ECF Nos.

187-16, 187-17, 187-28; *Matter of W. Tex. Marketing Corp*, 12 F.3d 497, 502 (5th Cir. 1994) (finding that the "settlement signed by the parties and approved by the bankruptcy court carries res judicata effect" and acts as a final judgment).  Accordingly, the dispute centers on whether the Final Decree, which incorporated the MSA, is a final judgment on the merits of the controversy surrounding the SA Calichar Lot sale.  *Compare* ECF No. 46 *with* ECF No. 104.

Whether the Mexican Judgments are barred by *res judicata* boils down to a difference in interpreting the MSA.  *See* ECF No. 187-6 ("The Parties . . . intend to be contractually bound by the following terms and conditions.").  A mediated settlement agreement is a contract and the rules of contract interpretation must apply.  *Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) (interpreting a divorce decree and settlement as a contract).  The primary goal of a court "is to ascertain the true intentions of the parties as expressed" in the contract.  *Coker*, 650 S.W.2d at 393 (citing *R&P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980)).  While interpreting a contract, courts must consider the entire writing and "give effect to all the provisions of the contract so that none will be rendered meaningless."  *Coker*, 650 S.W.2d at 393 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951)).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Coker*, 650 S.W.2d at 393 (citing *Myers v. Gulf Coast Minerals Mgmt Corp.*, 361 S.W.2d 193, 196 (Tex. 1962)).

If a contract is worded in a way "that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."  *Coker*, 650 S.W.2d at 393 (citing *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157).  Words are given "their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense."  *Plains Expl. & Prod. Co. v. Torch*

*Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).  "A contract is not ambiguous if the contract's language can be given a certain or definite meaning."  *Id.*  If a contract is "uncertain and doubtful or . . . reasonably susceptible to more than one meaning," then the contract is ambiguous.  *Coker*, 650 S.W.2d at 393–94 (citing *Skelly Oil Co. v. Archer*, 356 S.W.2d 774, 778 (Tex. 1962)).

Further, "extrinsic evidence of the parties' intent is not admissible to create an ambiguity" in a contract.  *Plains Expl.*, 473 S.W.3d at 305.  However, a contract "may be read in light of the circumstances surrounding its execution to determine whether an ambiguity exists." *Id.*  Irrespective of this,

> the rule that extrinsic evidence is not admissible to create an ambiguity 'obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction.'

*Id.* (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)).  A disagreement over the interpretation of a contract does not automatically render the contract ambiguous.  *Plains Expl.*, 473 S.W.3d at 305.

Here, this Court must determine whether the Final Decree and MSA are final judgments on the issue of the SA Calichar Lot sale and subject to the application of *res judicata*, or whether, as HRC argues, they do not resolve the issue at all. The MSA details the split of the community property between HRC and MER; however, it does not specifically mention the SA Calichar Lot sale.  *See* ECF No. 187-6.  Yet, the first explicit term of the MSA states that MER and HRC "hereby agree to settle *all claims and controversies* between them in this lawsuit."  *Id.* (emphasis added).  Similarly, the Final Decree "approves the [MSA] which *settles all claims and controversies* between the parties in this lawsuit and incorporates it by reference as part of this

decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement." ECF No. 187-11 at 3 (emphasis added). The plain language of both the MSA and Final Decree explicitly settles all claims and controversies between HRC and MER. *See Plains Expl.*, 473 S.W.3d at 305. Accordingly, *res judicata* applies to the Final Decree and MSA, which bar any claims and controversies in the Divorce Proceeding from being relitigated in a new lawsuit. *See In re Chestnut*, 356 F. App'x at 736. Thus, the question now becomes whether the SA Calichar Lot sale was a claim and controversy in the Divorce Proceeding.

This Court may consider the circumstances surrounding the creation of the MSA to determine whether there is any ambiguity regarding the SA Calichar Lot sale. *Plains Expl.*, 473 S.W.3d at 305. An analysis of the circumstances in the Divorce Proceeding demonstrates that the SA Calichar Lot was plainly a claim and controversy in IMMO Carmona. Although the SA Calichar Lot was not explicitly mentioned in the original petition for divorce, HRC accused MER of committing fraud on the community and "selling and transferring community assets to third parties without [HRC's] consent or knowledge" in his counter-petition for divorce. ECF No. 187-3 at 4. In HRC's response to interrogatories in the Divorce Proceeding, it states that MER engaged in "a legal act of purchase and sale of the real estate property subject matter of the present litigation without the consent of [HRC] pertaining to the real estate property located at San Antonio Calichar." ECF No. 189—Ex. A-21 at 4. At her deposition, MER stated that she sold the SA Calichar Lot without HRC's permission. ECF No. 189—Ex. B. at 6.[13] HRC also listed the SA Calichar Lot on his Second Amended Inventory and Appraisement. ECF No.

---

[13] "Q. In 1991 isn't it true that you sold a property located in San Antonio Calichar, Guanajuato, Mexico without telling your husband.?

A. Yes. That's right."

189—Ex. C. at 8.  HRC's Response does not qualify as a circumstance surrounding the creation of the MSA because it occurred long after the creation of the MSA; however, it confirms this Court's analysis of the circumstances.  ECF No. 104 at 10 ("HRC admits that the fraudulent transfer of the SA Calichar Lot was identified as a claim against MER.").  Based on the evidence in the record and HRC's own admissions, it would be entirely disingenuous to suggest that the sale of the SA Calichar Lot was not a claim or controversy as contemplated by the plain language of the MSA and Final Decree.  *See* ECF Nos. 104 at 10, 187-3 at 4; ECF No. 189—Ex. A-21; ECF No. 189—Exs. B, C.  Accordingly, this Court finds that the MSA and the Final Decree settled all claims and controversies between HRC and MER, including the sale of the SA Calichar Lot.  *See Plains Expl.*, 473 S.W.3d at 305.

Nevertheless, despite admitting that the SA Calichar Lot sale was a claim in the Divorce Proceeding, HRC contends that it was not resolved by the MSA and Final Decree.  ECF No. 104 at 30.  HRC points to the transcript from a May 6, 2015 hearing in the Divorce Proceeding, wherein the Texas court suggested that the issue of "whether or not [the SA Calichar Lot] was part of the agreement, whether it was part of the decree" should return to mediation.  ECF No. 188-2—Ex. D at 10.  HRC asserts that the Texas court's uncertainty regarding the SA Calichar Lot is evidence that the Final Decree is not a final judgment on the merits.  ECF No. 104 at 30.  HRC also notes that the Mexican court considered the Final Decree and MSA and found it did not resolve the issue of the SA Calichar Lot Sale.  *Id.*  Both of HRC's examples are an attempt to use extrinsic evidence of events occurring after the creation of the MSA to create an ambiguity in the MSA and Final Decree, which is not permissible in contract interpretation.  *See Plains Expl.*, 473 S.W.3d at 305.  HRC cannot point to any circumstances surrounding the creation of the MSA that suggest an ambiguity regarding the SA Calichar Lot sale and only relies on extrinsic

evidence.  *See id.*   There is no other reasonable interpretation of "settles all claims and controversies" that would give this Court the authority to consider extrinsic evidence.  *See id.* Irrespective of whether HRC intended to settle the issue of the SA Calichar Lot, the plain terms of the MSA and Final Decree settle the issue of the SA Calichar Lot Sale and therefore *res judicata* thereby bars relitigation of the same issue.  ECF Nos. 187-6, 187-11.

Accordingly, the Court finds that the Final Decree, incorporating the MSA, is a final judgment on the merits of the SA Calichar Lot Sale and the same cause of action is involved in both the Divorce Proceeding and the Mexican Judgments.   Therefore, the elements of res judicata are met and the claims involving the SA Calichar Lot cannot be relitigated.  *In re Chestnut*, 356 F. App'x at 736.  The Mexican Judgments conflict with the MSA and Final Decree because the Mexican Judgments involved relitigation of the SA Calichar Lot sale and find fault with MER.  *Compare* ECF No. 187-6 *and* ECF No. 187-11 *with* ECF No. 39-1 *and* ECF No. 39-3 *and* ECF No. 39-5 *and* ECF No. 39-7 *and* ECF No. 39-9 *and* ECF No. 39-11 *and* ECF No. 55-2 *and* ECF No. 56-2.  Thus, this Court finds that the Mexican Judgments must be denied recognition because they conflict with another final and conclusive judgment, namely  the MSA and Final Decree under § 36A.004(c)(4).

## IV. CONCLUSION

Amidst a flurry of litigation and numerous and contentious facts, this Court has been tasked with determining whether seven Mexican Judgments entered against Maria Eugenia Rosales should be recognized by this Court under the Texas Recognition Act.  In 2014, Hector Ricardo Carmona and Maria Eugenia Rosales settled a contentious divorce, which involved, *inter alia*, Hector Ricardo Carmona's claim that Maria Eugenia Rosales fraudulently transferred the SA Calichar Lot.  Subsequent to the settlement, Hector Ricardo Carmona brought litigation

against Maria Eugenia Rosales in Mexico resulting in seven Mexican Judgments.  Maria Eugenia Rosales seeks that this Court grant her Motion for Non-Recognition and decline to recognize any of the Mexican Judgments citing a lack of due process and impartial tribunals in Mexico, the Mexican court's alleged lack of integrity, lack of due process in the underlying Mexican proceedings, public policy arguments, and *res judicata*.  ECF No. 46.  Conversely, Hector Ricardo Carmona contends that there is no basis to deny recognition to the Mexican Judgments and requests that the Court deny the Motion for Non-Recognition.  ECF No. 104.

This Court considered the Parties' various evidentiary objections and Hector Ricardo Carmona's Motion to Strike.  The Court's evidentiary rulings can be summarized as follows:

1) Hector Ricardo Carmona's objections to the Maria Eugenia Rosales' Declaration, ECF No. 189—Ex. A, should be  OVERRULED in part and SUSTAINED in part as follows;

    i)   Paragraph 4 of ECF No. 189—Ex. A should be STRUCK;

    ii)  ECF No. 189—Ex. A-2 should be STRUCK;

    iii) All other objections should be OVERRULED.

2) Hector Ricardo Carmona's Motion to Strike, ECF No. 131, should be GRANTED in part and DENIED in part as follows;

    i)   Paragraph 4 of ECF No. 189—Ex. A should be STRUCK;

    ii)  All other relief requested in the Motion to Strike should be DENIED.

3) Hector Ricardo Carmona's objection to the Leopoldo Angeles Gonzalez Declaration, ECF No. 189—Ex. E, should be SUSTAINED;

4) ECF No. 189—Exs. E-1, E-2, and E-3 should be STRUCK;

5) Hector Ricardo Carmona's objection to the Irma Angelina Garcia Declaration, ECF No. 189—Ex. G, should be OVERRULED in part and SUSTAINED in part as follows:

    (i)   The last sentence in Paragraph 5 of the Irma Angelina Garcia Declaration should be STRUCK;

    (ii)  All other objections should be OVERRULED;

6) Hector Ricardo Carmona's objection to the Aquilino Sifuentes Yanez Declaration, ECF No. 189—Ex. F, should be OVERRULED;

7) Maria Eugenia Rosales' objections to Hector Ricardo Carmona's Declaration, ECF No. 188-2—Ex. A, should be SUSTAINED in part and OVERRULED in part as follows:

      (i) Paragraphs 2–4 should be STRUCK;

      (ii) The second sentence in Paragraph 7 should be STRUCK;

      (ii) The third sentence in Paragraph 7 should STRUCK;

      (iv) The statement in Paragraph 8 "and Judge Vasquez had confirmed in February that the SA Calichar Lot issues had not been resolved" should be STRUCK;

      (v) Paragraph 9 should be STRUCK;

      (vi) The third sentence of Paragraph 12 should be STRUCK;

      (vii) All other objections should be OVERRULED.

8) Maria Eugenia Rosales' objection to ECF No. 188-2—Ex. 2, attached to Hector Ricardo Carmona's Declaration should be SUSTAINED;

9) Maria Eugenia Rosales' objection to Javier Nuño's Declaration, ECF No. 188-2—EX. B, should be SUSTAINED;

10) Javier Nuño's Declaration, ECF No. 188-2—Ex. B, as well as the attached documents, ECF No. 188-2—Exs. 1–11, should be STRUCK.

The Court considered all five bases for denial under the Texas Recognition Act. The evidence before this Court simply does not meet the high burden of demonstrating that the judgments rendered by the Mexican judicial system does not provide impartial tribunals or procedures compatible with the requirements of due process of law and thus § 36A.004(b)(1) cannot serve as a basis to deny recognition of the Mexican Judgments. *See DeJoria*, 804. F.3d at 381. This Court finds that it cannot deny recognition of the Mexican Judgments based on § 36A.004(c)(7) because the judgments were not rendered in circumstances that raise substantial doubt about the integrity of the Mexican courts with respect to the judgments. Similarly, this

Court finds that it cannot deny recognition of the Mexican Judgments based on § 36A.004(c)(8) because the specific proceedings in the Mexican courts leading to the judgments was compatible with the requirements of due process of law.

Although the cause of action underlying the Mexican Judgments is not repugnant to Texas public policy, this Court finds that the Mexican Judgments are directly in contravention with Texas public policy and that it should decline to recognize the Mexican Judgments under § 36A.004(c)(3).  Finally, this Court also finds that the Mexican Judgments should be denied recognition because they conflict with another final and conclusive judgment, namely the MSA and Final Decree under § 36A.004(c)(4).

Accordingly, the Motion for Non-Recognition, ECF No. 46, should be GRANTED and the Mexican Judgments filed at ECF Nos. 39, 55, 56 should not be recognized by this Court.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 01/19/2018.

Eduardo V. Rodriguez
United States Bankruptcy Judge